CASE 31—WILL—JUNE 19, 1884.

# Porter, &c., v. Ford, &c.

### APPEAL FROM KENTON CIRCUIT COURT.

1. A last will and testament executed by a married woman, while her husband was living, and after his death recognized and adopted by her as her will, is valid.

2. As the paper disposes of her estate according to her intention, and after her husband died was adopted by testatrix, it should, as such, be admitted to probate as her will.

3. A substantial, rather than a literal compliance with the statute, is demanded.

BENTON & BENTON AND W. LINDSAY FOR APPELLANTS.

1. A paper purporting to be a last will and testament, written and signed by a married woman (having no separate estate and not acting under a power), is not her will. The paper does not, after the termination of her coverture, become her will by a declaration that she has made a will or by an obliteration of a portion of the writing. Gen. Stats., chap. 113, secs. 2, 4, 5, 10, and 11;. Payne v. Pollard, 3 Bush, 127; Anderson v. Miller, 6 J. J. Mar., 573; Yates' Will, 2 Dana, 216; George v. Bussing, 15 B. Mon., 563; Jarman on Wills, vol. 1, pages 30, 31, 85, 139; Williams on Executors, vol. 1, pages 1, 48, 49, 55, 57, 62, 178, 186, 186 n. s.; pt. 1, bk. 2, chap 1, sec. 1; 225; Noble v. Willock, Law Reports, 8 Chancery Appeals, 778; 7 English Reports, 382; Willock v. Noble, Law Reports, 7 House of Lords, 588; 13 English Reports, 100; Act of 1797, 2 Stat. Law, 1537; Revised Statutes, chap. 106, secs. 2, 5; Wills Act, 1 Vict., c. 26, secs. 3, 7, 8, 9, 13, 20, 22; Maxwell v. Maxwell, 3 Met., 101; Dougherty, &c., v. Dougherty, &c., 4 Met., 25; Mitchell and ux. v. Holder, etc., 8 Bush, 362; Thorndike, etc., v. Reynolds, etc., 22 Gratton, 21; Love v. Johnson, 12 Iredell, 362; Fransen's Will, 26 Penn. St. 202; Price v. Parker, 16 Simons, 198; Soward, etc., v. Soward, etc., 1 Duv., 126.

M. J. DUDLEY AND O'HARA & BRYAN FOR APPELLEES.

1. A holograph will made and executed by a married woman may, after her husband's death, be revised by her and made effectual as a new will without re-writing or formal acknowledgment of the same. Maxwell v. Maxwell, 3 Met., 106; General Statutes, chap. 113, sec. 2; Dougherty v. Dougherty, 4 Met., 25; 1 Duvall, 132; General

Statutes, chap. 13, secs. 2–10 and 11; Duval & Wife v. Graves, 7 Bush, p. 167; Phillips v. Creen, 5 Mon., p. 350; Breckinridge v. Ormsby, 1 J. J. Marsh, p. 240; Miller v. Shackelford, 3 Dana, 550; Upchurch v. Upchurch, 16 B. Mon., p. 102; Montgomery v. Perkins, 2 Metcalf, p. 440; Tuder v. Tuder, 17 B. Mon., 300; Chisholm's heirs v. Bruce, etc., 7 B Mon., p. 414; Mercer's Administ. v. Macklin, 14 Bush, p. 439; Swift v. Riley, 1 B. Mon., p. 118; 1 Stat. of Victoria of July 3, 1837, secs, 4, 7, 9; Williams on Executus, vol. 1, p. 56, 206, 207, 208, 225; Overton's heirs v. Overton s Excts., 18 B. Mon.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

This is an appeal from a judgment of the Kenton circuit court ordering to probate a paper dated June ·8, 1868, as the last will of Mrs. Lucy L. Porter, who died in 1881.

The paper was wholly written and subscribed by her. But at the date it bears she was a married woman, the wife of Thomas Porter, who died in 1875.

By it she devised to her daughter, Mrs. Lucy E. Ford, her residence in the city of Covington, and all her personal property except certain specific legacies, which she directed paid to the Baptist Home Missions, to her son, Thomas Porter, Jr., and two grandchildren. There is also a clause directing that her husband shall have the full benefit of a home with her daughter and necessary furniture.

Mrs. Porter received the real estate mentioned under the will of her father; the personal property was subsequently acquired by the will of her husband.

It appears that the paper in contest was found after her death in a trunk where she kept her private papers, that only herself and her grandson, whom she instructed, knew how to open. And when found it was inside an envelope, which was inclosed in two others,

the outer one only being then sealed, though the other two appear to have been previously sealed. There is an endorsement in her handwriting upon each envelope. Upon the first are written the words "Lucy Porter, private;" upon the next, "private, Lucy Porter;" and upon the outer one, which is the largest, "private, not to be opened until my death, Lucy Porter."

Subsequent to the death of her husband, Mrs. Porter frequently stated she had made a will devising all her property, except a few legacies, to her daughter, Mrs. Ford, giving as her reason for so disposing of it that her other children had received more than their shares from their father, and also said that her will would be found after her death in her trunk.

There were originally in the body of the instrument two gifts to Lucy Ford, now Mrs. Whitlock, a daughter of Mrs. Ford; one of them being a silk quilt and the other one thousand dollars. Both of these gifts have been erased, though by close inspection they may be indistinctly seen. To Mrs. Ford the testatrix said, in explanation, that she had given to Mrs. Whitlock the silk quilt, but having afterwards made a bridal present of it to another person, she erased the gift from the will. And to Mrs. Whitlock she stated she had given her one thousand dollars by her will, but since her, Mrs. Whitlock's marriage, she had erased it, inasmuch as she was then well provided for and did not need the money as much as her mother. As both the occurrences, which constituted the reasons for the two erasures, took place subsequent to the death of Mrs. Porter's husband, the changes must have been made after that event.

The disposition of her property by the paper in contest, as well as the reasons therefor, as stated in it, are entirely consistent with the repeated expression of her wishes and intentions made after the death of her husband, as well as with the declarations of both of them made before he died. And when the erasures made by her, the condition of the envelopes and endorsements thereon corresponding with, if not conclusive evidence of the changes made by her from time to time, and the care with which it was finally sealed up and placed in her trunk, are considered in connection with her frequent consistent and uniform declarations in respect to it, the conclusion is inevitable that the paper in contest was after the death of her husband deliberately adopted, recognized, and intended by Mrs. Porter to be her last will.

Such being the case, and no controversy arising as to the paper being wholly written or subscribed by her, nor as to her mental capacity to make a will, the only question presented is, whether it should be held a valid will, notwithstanding it was written in 1868, while she was a married woman.

The sections of chapter 113, General Statutes, which have any application, are as follows:

"Section 2. Every person of sound mind not being under twenty-one years of age, *nor a married woman*, may, by will, dispose of any estate, right, or interest in real or personal estate that he may be entitled to at his death, which would otherwise descend to his heirs or pass to his personal representatives; *and though he may become so entitled after the execution of his will.*"

"Section 5. No will shall be valid unless it is in writ-

ing, with the name of the testator subscribed thereto by himself, or by some other person in his presence, and by his direction; and, moreover, *if not wholly written by the testator* the subscription shall be made, or the will acknowledged by him in the presence of at least two credible witnesses, who shall subscribe the will with their names in the presence of the testator."

We have not been able to find any case arising under the statutes of wills in this State or similar statutes ·elsewhere in which the exact question now presented has been definitely decided. Nor is there any provision of the General Statutes which fully meets this ·case. It must, therefore, be determined according to the reason and analogy of the law."

" Publication, when spoken of a will, signifies that a testator has done some act ·from which it can be concluded that he intended the instrument to operate as a ·will." Bouvier's Law Dictionary. And in order to insure identity and prevent fraudulent additions to, or alterations of, the instrument, the General Statutes require in every case, when the will is not wholly written by the testator, that "the subscription shall be made, or the will acknowledged by him in the presence ·of at least two witnesses, who shall subscribe the will with their names in the presence of the testator."

But in the case of a holograph will, no acknowledgment by the testator, attestation by witnesses, nor any other mode of publication than that it be wholly written and subscribed by the testator, is necessary to make it valid.

By section 11 it is provided, that "no will or codicil, or any part thereof which shall be in any manner

revoked, shall after being revoked, be revived otherwise than by re-execution thereof, or by a codicil executed in the manner hereinbefore required; and then only to the extent to which an intention to revive the same is shown thereby."

Even if it be conceded that this section has reference to a will wholly written by the testator, as well as to one that is required to be acknowledged and attested in the manner prescribed in section 5, still, as the object of the section is merely to provide the mode in which a will that has been revoked may be revived, it can have no application to the will of a married woman, which, being invalid or inoperative during coverture, can not, in the meaning of the statute, be revoked.

In this case there has been no revocation, and consequently, the will could not be a revived in the sense the word is used in section eleven. But the paper which was wholly written and subscribed by the testatrix, while she was a married woman, has, after the death of her husband, and when she became capable of making a will, been adopted, identified, and left by her as her will.

Does the law require more to be done than has been done in this case? We think not. For certainly there is no provision in the General Statutes which either in terms or by necessary implication requires the holograph will of a married woman to be re-written or re-subscribed after she becomes dis-covert in order to make it valid. Nor is there any reason why the will in this case should not be held valid.

It is as fully identified, and as certainly and entirely the will of Mrs. Porter, as if she had re-written and

dated it after the death of her husband. For, when competent to make a will, she acknowledged, recognized, and by repeated and unequivocal acts and declarations made it conclusive that she desired and intended the instrument to operate as her will.

The objection urged that oral testimony must be relied on in this case in order to establish the paper in contest as the will of Mrs. Porter applies here no more than in any other case. For this will, like every other valid will, speaks for itself, and the simple inquiry is whether it is her will, and to that extent, and for that purpose only, is it necessary to rely upon oral testimony.

As has been often held "in every adjudication of this court involving the publication and attestation of wills, a substantial, rather than a literal compliance with the statute, has been demanded, and if its object and intent were reached without a violation of its express language, that is all that has been required." Soward v. Soward, 1 Duvall, 126.

As the paper in contest, beyond any controversy, disposes of the estate left by Mrs. Porter according to her wish and intention, and was, while she was competent, and had the right under the law to make a will, adopted, recognized, and left for her will, it should be admitted to probate as such. For, in our opinion, it can be done without a violation of either the letter or spirit of the statute.

Wherefore the judgment is affirmed.

To a petition for a rehearing—

JUDGE LEWIS DELIVERED THE FOLLOWING RESPONSE:

It is contended by counsel in the petition for rehearing, as was done in their brief, that Mrs. Porter having been a married woman when the paper in contest was written and subscribed by her, it was absolutely void, and being so then, it could not be made valid by any act or acts on her part after she became a *feme sole* short of re-writing and re-subscribing it, however solemn and conclusive of her intentions as to the disposition of her estate they might be.

Before thus curtailing a right which it is declared in section 2, chapter 113, *every person* of sound mind, not under twenty-one years of age, nor a married woman, may exercise it, should be made manifest that some indispensable requirement of the statute has not been complied with, or at least that the letter or spirit of it would be violated by establishing the paper as her will.

Section 5 does not in terms, nor was it intended to abridge the right conferred by section 2, but merely to prescribe the mode in which wills should be executed with a view to insure identity and prevent fraud, or in the language of counsel, "to secure a will which expresses the wishes of the testator." It does not, therefore, follow that, because there is contained in section 5 no explicit direction as to the precise manner in which a will may be made valid in the state of case presented by this record, the paper in contest is to be held void. On the contrary, if the right to dispose of her estate by will, which after the death of her husband Mrs. Porter clearly had, can be upheld without violating the

letter or spirit of the statute, it is the duty of the court to do it.

Inasmuch as the statute, for obvious reasons, with-holds from a married woman the right to dispose of her estate by will, except in the cases mentioned in section 4, it of course is necessary for her, after she becomes testable, to do some act equivalent to an acknowledgment as her will of the instrument, executed while she was under disability.

If the paper in contest had not been wholly written by the testatrix, it would have been necessary, in order to give it validity, for her, after the death of her husband, to re-acknowledge it in the presence of at least two credible witnesses, and for them to subscribe their names in her presence. But it would not, in that case, have been indispensable for the will to be either re-written or re-subscribed by her. For, as the statute does not peremptorily require a will to be either written or subscribed by the testator in the presence of the attesting witnesses, but in plain terms makes it suffice, if it be acknowledged by him in their presence and subscribed by them in his presence, it is not necessarily a material inquiry at what time before being acknowledged it may have been written or subscribed by him.

If, then, the acknowledgment by a testatrix after she becomes a *feme sole* in presence of witnesses, who then subscribe it in her presence, is sufficient to make an instrument subscribed, but not wholly written by her while she was a married woman valid as her will, why should not the paper in contest which the statute does not require to be either acknowledged or attested, but which has been deliberately and freely adopted, recog-

nized, and left by the testatrix as her will, and that indubitably disposes of her estate according to her wishes and intentions, be also held valid? If, in one case the acts of acknowledgment and attestation that render valid an instrument before invalid as a will, may be proved by oral testimony, why may not the acts and declarations of the testatrix in this case, which conclusively establish her adoption and recognition of the paper in contest as her will, be likewise proved?

To admit to probate a will upon the facts presented by this record would violate no provision of the statute nor its spirit. But to reject the paper presented would not only defeat the manifest wishes and intentions of the testatrix, but deprive her of a right in express terms given.

The petition for rehearing is overruled.