Faye TEATER et al., Appellants,

v.

Virgle NEWMAN et al., Appellees.

Court of Appeals of Kentucky.

Oct. 15, 1971.

Leer Buckley, Lawrence C. Jenkins, Julian R. Gabbard, Lexington, for appellants.

Richard M. Compton, Todd, Compton & Odell, George M. Combs, Herman M. Dayton, Lexington, for appellees.

CULLEN, Commissioner.

The proponents of an alleged will of Addie Owens, deceased, are appealing from a judgment of the Fayette Circuit Court which affirmed an order of the county court denying probate. The issue was whether the will was executed in conformity with statutory formalities. The circuit court submitted that issue to a jury, which found the will to be valid, but on motion for judgment n. o. v. the court set aside the verdict and entered judgment declaring that the will was not valid.

The evidence heard on the trial was not designated as a part of the record on appeal. However, the trial judge, in a written opinion sustaining the motion for judg-

ment n. o. v., made a detailed statement of the facts of the case, and there is no dispute here about that statement. We quote the essential facts from the trial judge's opinion:

"Mrs. Owens was an elderly widow who resided in her home on South Upper Street, in Lexington. For many years, Mrs. Owens had been addicted to the use of narcotics which she received legally by prescription from her physician. Over the course of years, the decedent became a friend of her physician's office assistant, Mrs. Rebecca Ross. At Mrs. Owens' request, Mrs. Ross contacted her son, Paul, who is an attorney, for the purpose of assisting her in the preparation of a will.

"Paul Ross contacted Mrs. Owens, but she was so wary of anyone knowing about her intentions that she refused to give him the information necessary to prepare a will. Instead, Paul Ross left with Mrs. Owens a typewritten skeleton or form that she was to use in writing her own will. This skeleton was typed on two pages of legal sized paper (8½ x 13).

"On September 14, 1965, Paul Ross and his father returned to Mrs. Owens' home for the purpose of witnessing a will. Mrs. Owens had several sheets of paper, but Paul Ross saw only a single page which contained a place for Mrs. Owens' signature and a typewritten attestation clause. The paper was then duly executed.

"Mrs. Owens subsequently broke her hip, which resulted in her becoming an invalid. In late August or early September, 1967, Mrs. Owens employed Mrs. Nora Yarber as a companion. The two women did not know each other before this time. Mrs. Yarber received $12.50 per week, plus room and board. During October, Mrs. Owens told Mrs. Yarber that she was providing for Mrs. Yarber in her will. On one occasion Mrs. Yarber saw Mrs. Owens sign her name to a sheet of paper which the decedent identified as being a part of her will although Mrs. Yarber never saw any of the contents.

"In early November, 1967, Mrs. Owens was admitted to the hospital. While there, Mrs. Owens told Mrs. Yarber to go to a desk in her house where she would find her will. Mrs. Yarber found a sealed envelope in the desk which she delivered to a neighbor, Mrs. Faye Teater, for safekeeping. Shortly before Mrs. Owens died, Mrs. Teater delivered the sealed envelope to Paul Ross.

"When Ross opened the envelope to examine the contents, he found a total of eight pages. Some of the pages were folded together, others were not, so as to form three separate sets of papers. Ross did not know the order in which the sets were found when he removed them from the envelope. For convenience, the Court will refer to them as Set A, Set B and Set C, without intending to indicate their sequence within the envelope.

"Set A consisted of the two typewritten pages which Paul Ross had prepared as a will outline or skeleton for Mrs. Owens in August, 1965. These two pages were folded together separately from the others.

"Set B consisted of the page which was signed by Mrs. Owens on September 14, 1965, and witnessed by Paul Ross and his father. This page was a sheet of plain white paper approximately 8½ inches by 11 inches. Mrs. Owens' signature appears on a typewritten line approximately 3¾ inches from the top. Beneath the signature is a typewritten attestation clause which recites:

'Signed and acknowledged by Addie Owens to be her last will and testament * * *.'

The original typewritten date in the attestation clause was '10 day of March 1959.' With a ballpoint pen Mrs. Owens had inserted the numerals '62' in the year. However, all the date had been blocked out with a blue ballpoint pen, and Mrs. Owens had written the date '14 September 1965', also with a blue ballpoint pen. Mrs. Owens' signature and that of Paul Ross and his father were all written in black ink with a fountain pen. According to Paul Ross, this attestation page (Set B) was folded in half vertically from top to bottom and folded roughly into thirds by two horizontal folds. As thus folded, it measured roughly 5 inches by 3¾ inches.

"Set C consisted of five sheets of ruled, loose leaf, notebook paper which measured approximately 8 inches by 10½ inches. According to Ross, the five sheets of Set C had been folded together by first making a horizontal fold into halves and then again horizontally into quarters. As thus folded, Set C measured 8 inches by 3¾ inches.

"The five pages are entirely in the handwriting of Addie Owens. The first page is not numbered but it is apparent that it precedes the others. The other pages are numbered at the top 2, 3, 4 and 5. The first page commences with the date 'September 14, 1965' and is followed by an introductory paragraph which recites that it is the decedent's will. This is followed by paragraphs numbered 2, 3, 4 and 5. On page two appears paragraphs numbered 6 and 7. Paragraphs numbered 8 and 9 appear on page three and a paragraph numbered 10 appears on page 4. The paragraphs on page five are unnumbered.

"The five pages of Set C are unusual in a number of ways. The first page contains no dispositive clauses at all but repeats some of the clauses contained in the will form furnished by Paul Ross (Set A). Yet, page two commences with a testimonium clause which is also dated September 14, 1965. Immediately beneath the testimonium clause, paragraph 6 provided that Rebecca Ross, Faye Teater and Nora Yarber are to make her funeral arrangements. Since Addie Owens did not know Mrs. Yarber until August or September of 1967, it is obvious that the remainder of the five pages was written long after September 14, 1965. The next pages contain a number of specific bequests. It should be noted that on page three, she divides her accounts in

the Second National Bank among Rebecca Ross, Faye Teater and Nora Yarber. On page five, she bequeaths her jewelry to Rebecca Ross and her home to Nora Yarber.

"On page one, all but the last two lines are filled by writing. Page two is signed by Mrs. Owens at the bottom, her signature being separated by seven lines from the last writing on the page. Pages three and four are also signed at the bottom by the decedent and the signatures are separated from the writing above by only a single line. However, page five is not signed and ten blank lines separate the last writing from the bottom of the page.

"One further feature of the pages in question must be disposed of. On the attestation page (Set B) the typewritten numbers '666' appear immediately above the decedent's signature at the top of the page. Paul Ross testified that it was his recollection that he also prepared this page on his typewriter. In order to make a line on this typewriter, he stated that it was necessary to use the upper case of the 6 key. He accounted for the '666' by his failure to shift to the upper case. Therefore, the '666' at the top of the attestation page has no significance from the point of view of pagination.

"On page two, Mrs. Owens wrote:

'this will is all rite as I have written this will with my own hands' "

◾ It is our opinion that the trial judge correctly held that the purported will was not executed in conformity with the statutory requirements, particularly the requirement of KRS 446.060 that the signature be "subscribed at the end or close of the writing."

This court has said that the purpose of the requirement that the testator's signature be at the end or close of the will is "to indicate that his testamentary dispositions had been fully and completely expressed." Lucas v. Brown, 187 Ky. 502, 219 S.W. 796. Page says that the purpose

of such a requirement is "to do away with the necessity of inquiring into the actual intention of the testator in writing his name in the body of the will, and to avoid inquiry as to whether the instrument in question is intended as a preliminary draft or as a final and complete instrument." 2 Bowe-Parker, Page on Wills, Section 1953, pages 153, 154. The Pennsylvania court has said that the purpose is "to indicate that it was the completed expression of the intention of the testatrix." In re Fisher's Estate, 283 Pa. 282, 129 A. 90.

◾ It appears clear that the statute admits of no substitute for the proper placing of the signature as evidence of the completion of the testator's testamentary expression. The fact that the intention of the testator of making a completed testamentary disposition may be clear from other evidence, such as oral declarations or the placing of the signature on the outside of a sealed envelope containing the testamentary papers, is of no avail. Miller's Ex'r v. Shannon, Ky., 299 S.W.2d 105; Hall v. Edds, Ky., 305 S.W.2d 317. Accordingly, the statement of Mrs. Owens, to Mrs. Yarber, that her will was in a desk in her house (where Mrs. Yarber found the envelope containing the purported will), cannot supply a deficiency in compliance with the statutory requirement as to the position of the signature.

The controlling question is whether the signature of Mrs. Owens was *in fact* at the end or close of the will. Her *intent* that it be there supplies nothing if the signature never in fact *was* there. The question has to do with *actual presence* at the time of execution. See Annotation, 38 A.L.R.2d 477 at 481.

There is no *direct* evidence in the record before us that the sheet bearing the signature ever was placed at the end or close of the will. The sheet was in the same envelope with the pages bearing dispositive provisions but it was folded separately, was on a different kind of paper, and gave indication, by a series of changed dates noted

upon it (the last of which clearly preceded the writing of some of the dispositive provisions), that the testatrix several times had changed her mind about her testamentary dispositions.

The only basis on which it could be maintained that the sheet bearing the signature was in fact at the end or close of the will would be that the fact could be *inferred* from the mere presence of the sheet in the envelope, the inference being justified on the ground that *logically* there would be no reason for the testatrix to have put the signature sheet in the envelope unless she intended it to evidence a completion of her testamentary expression. One fallacy in that proposition is that it rests on *inferred intent* rather than the statutory required *direct* evidence of intent from actual position of the signature. Furthermore, we think that it is equally as probable that the signature sheet was placed or left in the envelope simply as one of Mrs. Owens' *working* papers, the same as the two-page outline prepared for her by Paul Ross. (Mrs. Owens' statement to Mrs. Yarber that her will was in the desk is no evidence that the signature sheet was ever made a part of the will, any more than was the two-page outline.) With two equal probabilities, neither one can rise to the force of an inference; both become mere possibilities.

Obviously, the signature in question was not *written* at the time the rest of the purported will was written. Nor was it affixed or appended to a *final* testamentary document on the last *date* entered on the sheet, because some of the dispositive provisions were written after that date. Therefore, in order for there to be a valid will, the signature sheet would have to have been affixed or appended at the end or close of the testamentary document at some unidentified time.[1] It is our opinion that an *inference* that such affixing or appending was done would require a much stronger basis than would be required in a case where the separated or disconnected signature obviously was written simultaneously with the testamentary dispositions.

Our conclusion that the will did not meet the statutory requirements is supported by the authorities from other jurisdictions annotated in 38 A.L.R.2d at pages 477 et seq.

The judgment is affirmed.

MILLIKEN, C. J., and NEIKIRK, OSBORNE, PALMORE, REED and STEINFELD, JJ., concur.

EDWARD P. HILL, Jr., J., dissents.

EDWARD P. HILL, Jr., Judge (dissenting).

Regretfully, I must respectfully dissent from the result reached by the majority opinion. As I see it, there are two propositions which require resolution in this case. The first one is: Is it lawful in Kentucky for a testator to adopt his previously written signature as the effective signature of a will drawn after the time when the signature was first written? Although the majority opinion, by footnote, avoids this question, one must assume that the question requires an affirmative answer, since the rest of the majority opinion could easily be omitted if it is never legal in Kentucky to adopt a previously written signature.

I think the clear majority rule in this country is that the adoption of a previously written signature is perfectly legal and entirely valid. See, for example, In Re Estate of Giles, Miss., 228 So.2d 594 (1969), in which it is written:

"There is another rule of law which appears to be applicable in the instant case. It is generally recognized that a testator may adopt his own signature,

---

1. We assume for the purposes of this opinion, but do not decide, that such affixing or appending would be acceptable as substantial compliance with the statute.

which he has already written, as the signature in executing a testamentary instrument. See the authorities enumerated in Page, The Law of Wills, § 19:52 (1960); 94 C.J.S. Wills § 171 (1956); 57 Am.Jur. Wills § 261 (1948); compare Wallace v. Harrison, 218 Miss. 153, 65 So.2d 456 (1953)." Id. 228 So.2d at page 597.

In the Giles case the testatrix had excised her previously written signature on an earlier will and sewn it with thread to the bottom of a subsequently written holographic will. The court held that the will was valid.

This court has long declared that substantial compliance with the statutes relating to the execution of wills is sufficient. For example, see Garnett v. Foston, 122 Ky. 195, 91 S.W. 668, 121 Am.St.Rep. 456 (1906), in which the court treated the matter in this language:

"But the course has never been to demand literal compliance with such provision. On the contrary, the rule in this state has always been that a substantial compliance will satisfy the statute." (Citations omitted.) Id. 91 S.W. at page 671.

Perhaps this portion of the problem should not be left without reference to Porter v. Ford, 82 Ky. 191 (1884), in which it was held that a holographic will written when the testatrix was a married woman (then ineligible to make a will) nevertheless was valid, because her husband died before she did; thus she was not a married woman when the will became effective. The court attached much significance to the fact that after her husband's death the testatrix made frequent oral references to her will's being located where it was later found. Two bequests which had appeared in the instrument as originally prepared had been erased—yet the court held that no re-signing was required. The following language in the opinion is significant:

"But the paper which was wholly written and subscribed by the testatrix, while she was a married woman, has, after the death of her husband, and when she became capable of making a will, been adopted, identified, and left by her as her will." Id. 82 Ky. at page 196.

So, if a testator in Kentucky may validly adopt a previously written signature for use upon a subsequently written will (and I think it is obvious that he can), the question becomes: Did this particular testatrix do so? Like the jury which heard the evidence in this case, following instructions of which no complaint is made, I think the evidence clearly shows that this testatrix did adopt her previously written signature as the final signature of her holographic will. But whether I would have so voted as a juror is not the question. The critical inquiry is: Was there substantial evidence to support a jury's verdict that she did adopt her previously written signature? In my judgment, the answer to that question is a resounding "Yes," for the following reasons:

While bedfast in a hospital, Addie Owens directed Mrs. Yarber to go to a desk in Mrs. Owens' home and procure a sealed envelope containing Mrs. Owens' "will." Mrs. Yarber found the sealed envelope where Mrs. Owens said it was. When it was opened after the death of Mrs. Owens, it contained the sheets in question. Unfortunately, the individual who opened the envelope could not recall the physical order in which the papers were found when he removed them from the envelope.

Nobody contends that fraud or "dirty work" appears in this case. It simply is a case in which the majority of the court seems unwilling to accept the fact that Mrs. Owens really did make a valid will.

No amount of *intention* by Mrs. Owens would serve to supply the action necessary to comply with the statute. Cf. Greene v. Cotton, Ky., 457 S.W.2d 493. Yet, if the evidence fairly supports the inference that she did intend to make a will, and did

intend her previously written signature to be her newly adopted signature to that will, her *intention* becomes vital, because it breathes validity into the *action* she took in placing the papers together in a sealed envelope and plainly stating that the envelope contained her will.

The majority opinion states that its view is supported by authorities annotated in 38 A.L.R.2d at pages 477, et seq. With all respect, I am unable to so read the authorities as lending support to the majority view. On the contrary, I believe the great bulk of the authorities in 38 A.L.R.2d 477, et seq., support the view that there was abundant evidence to sustain the verdict of the jury upholding the will of Mrs. Owens.

In citing Lucas v. Brown, 187 Ky. 502, 218 S.W. 796, the majority opinion recognizes that the requirement for signing at the "end" does not mean a literal, physical rewriting. It means only that the testator has "signed off!" If adoption of a previously written signature is valid (and the vast weight of authority says it is), then it becomes necessary only to ascertain whether the adoption was at the end, as a basis for authenticating the act of the testatrix. Citation of the Pennsylvania cases in the majority opinion is strange in light of the critique of them found in 38 A.L.R.2d 489, et seq. The Pennsylvania rulings represent the minority view, and appear to be based upon what the annotater in 38 A.L.R.2d 477 calls a "strange" construction of Wikoff's Appeal (1850) 15 Pa. 281, 53 Am.Dec. 597.

The majority opinion finds no significance in the fact that at the beginning and at the end of the sheets appear the date, September 14, 1965. Since the pages referred to Mrs. Yarber, who was not known by Mrs. Owens until 1967, the 1965 dating results in an anachronism. But the act of inscribing that date at the alpha and omega of the instrument clearly denotes Mrs. Owens' intent to show that this was now "one package." Here was "intrinsic" coherence. There was abundant extrinsic evidence that the sealed envelope contained the will of Mrs. Owens.

It is not a light thing to overturn the final wishes of a testatrix. Implicit in the statutory enablement for making holographic wills is the salutary legislative policy that strict formalism is not required. The fundamentals are that the paper be wholly in the handwriting of the testatrix, signed (whether by adoption or by subsequent writing), and evincing testamentary intention. All of this appears here. I would reverse the judgment and enter judgment upholding the will pursuant to the verdict of the jury.

Anderson & Crumpler, Magnolia, for appellants.