## HAYS *v.* HARDEN.

A testamentary paper, to constitute a valid will under the act of 1833, must be signed at the end thereof; hence a paper which contained, after the signature of testator, a clause stating his reasons for making the devise, which clause was not signed at the end thereof, is not a valid will.

Proof of the handwriting of a subscribing witness to a will, where the witness cannot be called, is equivalent to his oath to the signature of the testator.

A decision by the register is not essential to entitle a devisee to prove a will, in an action for the land.

In error from the District Court of Allegheny county.

*Sept.* 17. This was an ejectment by Hays, claiming as devisee of John Hays, in which the question was whether there was a will properly proved. On the trial before Lowrie, J., the plaintiff offered in evidence a written document purporting to be the will of John Hays. This contained a recital, then a clause appointing executors and directing the payment of debts, then a clause devising " all my leasehold estate to Abraham Hays, (the plaintiff,) witness my hand and seal, this 26th September, 1844.

" John Hays, [L. s.]"

Then followed a clause stating the reasons for making the will, which clause concluded, " signed, sealed, and delivered by the above-named John Hays, to be his last will and testament, in the presence of us, who at his request and in his presence have subscribed as witnesses thereto." Then followed the signatures of two witnesses. The witnesses proved their signatures, and that of the testator, and the will *without* the last clause was offered, and rejected as not being signed at the end.

The plaintiff then offered a testamentary paper signed and sealed by John Hays, on the 24th September, 1844, devising the testator's land to the plaintiff. This was witnessed by two persons. One of them being called, proved the signature of the subscribing witnesses, (one of whom was dead,) and that of the testator. Another witness also proved the signature of the deceased subscribing witness. Neither of the papers had been decided upon by the register. This paper was rejected because the signature of the testator was not proved by the witnesses, and because the paper had not been admitted to probate.

The rejection of these two papers were the errors assigned.

*Forward* and *Swartzwelder*, for plaintiffs in error.—The same proof is required of a will as of any other instrument, excepting the necessity of having two witnesses : Engles *v.* Bruington, 4 Yeates, 345 ; Miller *v.* Carothers, 6 Serg. & Rawle, 215. The last will was complete in itself, and the additional clause, after the signature, is to be rejected : Stroble *v.* Smith, 8 Watts, 280. It was not essential that there should have been a probate : Smith *v.* Bonsall, 5 Rawle, 80.

*Woods* and *McCandless*, contrà.—The whole of the latter paper constituted the will, and unless properly executed could not be received. This, by the words of the statute, must be a signature at the end thereof : Dunlop *v.* Dunlop, 10 Watts, 153. As to the earlier will there was insufficient proof. It must be by the oath of two witnesses—here but one was called, with proof of the handwriting of the other. That is not equivalent to proof by oath : 1 Jarm. on Wills, 69, 74 ; Tipping *v.* Tipping, 1 P. Wms. 731 ; King *v.* Parks, 19 Johns. 375 ; 1 Phil. on Ev. 383, 384 ; Stricker *v.* Groves, 5 Whart. 398 ; Cavett's Appeal, 8 Watts & Serg. 26 ; Hoch *v.* Hoch, 6 Serg. & Rawle, 48. Under the act of 1832, the will must be proved in the register's office in the first instance : Loy *v.* Kennedy, 1 Watts & Serg. 398 ; Lovelace on Wills, 286,

256, 257; 1 Williams on Ex. 160, 185, 192, 339, 346; Huff's Appeal, 15 Serg. & Rawle, 39.

*Sept.* 29. GIBSON, C. J.—As the argument for the defendants in error in support of the principal point, is founded on the peculiar provisions of the present statute of wills, it is necessary to compare it with its predecessor. The act of 1705 provides that wills of land, " proved by two or more credible witnesses on their solemn affirmation, or by other legal proof," should be good and available in law. The adjunct of other legal proof was not intended to be in any thing a substitute for the testimony of the two witnesses; but, without expressly conceding the morality of a judicial oath, to let it in as a substitute for an affirmation, it is scarce necessary to remark that the public conscience at that day was tender on the subject. The statute therefore required that the *execution* of a will should be proved by nothing less than the oaths or affirmations of two witnesses. But the question—what shall constitute the *corpus* of a will, was left to be determined by the 32 and 34 H. 8, and the decisions on them; in accordance with which, it was held that a will, in Pennsylvania, need not be signed or proved by all the subscribing witnesses, or be subscribed by witnesses at all, or have been seen by the testator, or read to him, if it was put upon paper before the breath was out of him. That was the old law; and the mischief of it was that, as it was unnecessary for the testator to have adopted the instrument after it was finished, or to have put the finishing stroke to it himself, it followed, that *memoranda* for the preparing of a will, dictated by a dying man and read over to him by a scrivener, or rough drafts of unfinished dispositions in contemplation of death, or indeed any scrap of testamentary type found among a dead man's papers, might be admitted to probate. To correct this, the statute of 1833 enacts that " every will shall be in writing, and unless the person making the same shall be prevented by the extremity of his last sickness, shall be signed by him at the end thereof, or by some person in his presence and by his express direction; and in all cases shall be proved by the oath or affirmations of two or more competent witnesses: otherwise such will shall be of no effect." Now what did this add to the previous solemnities of execution? The 32 and 34 H. 8, had required that a will of land be put in writing; the act of 1705 had required that it be proved by the oaths or affirmations of two witnesses; and to these provisions the act of 1833 added another, partly borrowed from the English statute of frauds, that it be signed at the end of

it, with the name of the testator by his own hand, or, in case of necessity, by the hand of some person expressly appointed by him. The solemnity of the signature, therefore, and not attestation of two witnesses, was the only thing superadded; the rest was left to stand where it stood before. As to the number of the witnesses, or the matter to be proved by them, no new provision has been introduced which touches the proof of execution; and that either or both of them shall swear directly to the act of signing or publishing, is required neither by the act of 1705, nor the act of 1833. If the legislature had intended that the law should be satisfied with nothing less, they would have said so in terms, and not have let testators die in ignorance of an alteration so radical. They have, however, used the operative words of the former statute: and they doubtless were induced to do so by the fact that the danger of imposition had come, not from laxity in the proof of execution, but from laxity in the texture of the instrument. No defect in the manner or the quality of the proof, had called for correction; or if it had, the correction was not applied. The decisions under the former law, therefore, are precedents for the interpretation of the present; but independent of that, how would it stand on general rules of construction? We are to interpret this statute like every other, as near as may be to the principles of the common law; and consequently in accordance with its rule, that no more is to be required than the best evidence of which the nature of the case is susceptible. The general rule is, that where the testimony of a subscribing witness cannot be had, the instrument may be read on proof of his handwriting, or, as some of the cases have it, on proof of the handwriting of the party who executed it. The doubt has been whether proof of the signature of the witness is not indispensable; but no one ever thought that proof of the signature of the party is so. The former, when it is all that can be had, is an equivalent of the witnesses' oath; and being *primâ facie* evidence of execution, it is not indispensable that it be followed by evidence of the handwriting of the grantor, obligor, or drawer of a bill or note; and that the rule is applicable to a will was expressly decided in Engles *v.* Bruington, 4 Yeates, 345, and Dewey *v.* Dewey, 1 Metc. 349, which are directly in point. And in Mullen *v.* McKelvey, 5 Watts, 399, it was held that a will may be proved entirely by circumstantial evidence doubly attested, although the statute of that day, like the present, required proof of execution by the oaths of two witnesses. But that evidence of the testator's handwriting may not be required when that of the subscribing witnesses cannot be procured,

I am far from asserting. What I mean is, that where the act of execution is complete at the performance of it, and the testator has called two witnesses to attest it, his will shall not be frustrated by circumstances he could not prevent, merely because to proof of the handwriting of the witnesses there cannot be added proof of his own. If he were, for greater caution, to call a dozen of attesting witnesses, they might all die before him, or go beyond the reach of process; so that should a devisee prove the handwriting of each, he would, on the principle of the argument, lose his title unless he would add to the mass of proof, evidence of the handwriting of the testator. The will of a marksman who had it attested by the number of witnesses required by the statute, would inevitably be destroyed by the death of either of them. And the will before us would inevitably be in the same predicament; for though the testator's signature is composed of letters perfectly recognisable, it has no distinctive shape or feature by which any peculiar character can be attributed to it. It is the autograph of one who could write nothing else; and having nothing more peculiar in its configuration than a mark has, it is not strange that no one could be found to prove it. But that such a scrawl is not altogether useless in making proof of execution, was admitted in Cavett's Appeal, 8 Watts & Serg. 23; but it was by no means held to be indispensable. The question was whether the testator's signature by a third person was, under the exception in the statute, a substitute for his signature by his own hand; and though it was held that tremour, or partial inability to write, was not a circumstance to bring the case within it, it was not said that the statute repealed the rule of the common law, which is satisfied with secondary evidence when primary cannot be had.

The remaining assignment of error, however, is not sustained. Signing at the end of a will was required by the statute to prevent the evasion of its provisions that followed the English statute of frauds, which the judges held to be satisfied wherever the testator's name, in his own handwriting, was found in the introductory or any other part of the instrument. Besides, as all the devises in a will constitute one instrument, signing at the end of it serves to show that the whole disposition of the testator's estate was finished and not in embryo, which the want of a formal act of authentication had before left room to doubt. The argument, that all which precedes the signature, having once been formally executed, should remain stable, and that the additional matter alone should be rejected, is plausible but unsound. It is evident that the

testator considered the whole to be one will; and we have no reason to believe he would have wished any part of it to stand if the whole did not. We must bear in mind that every executed will is revocable in the testator's lifetime; and when devises are subjoined to it, it is evident that the original paper does not contain the testator's whole counsel. A codicil, being distinct and supplemental, stands on different ground; for where it is itself executed according to the statute, it casts no doubt or uncertainty on the state of the testator's mind as to what preceded it. It is better, therefore, that an informal addition should operate as a statutory revocation of the whole, than that a plain injunction should be frittered away by exceptions. The statute is a most wholesome one; and while we refrain from carrying its provisions beyond the views of the framers of it, we must not err on the other side.

Judgment reversed, and *venire facias de novo* awarded.