## Brown Estate.

Argued April 13, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*Charles Barrickman,* of *Buchanan & Barrickman,* with him *Graham & Dilley,* for appellant.

*Lawrence M. Sebring,* with him *D. B. Hartford,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, May 10, 1943:

This is an appeal from the decree of an orphans' court, reversing the refusal of the register of wills to

probate a testamentary paper on the ground that it was not signed at the end thereof as required by Section 2 of the Wills Act of June 7, 1917, P. L. 403, 20 PS 191.

All of the facts are recited in our previous opinion in this case reported in 343 Pa. 230. We there unanimously decided that this writing was testamentary in character. But we also stated (page 238) : *"As testamentary dispositions, the endorsements are concededly ineffectual, because not in compliance with our statute of wills."* Despite our decision the appellee herein presented the paper to the register of wills, who refused probate. The lower court reversed the register. This appeal followed.

There can be no question that the paper is testamentary in character. Our decision to that effect is amply supported by the cases cited in MR. JUSTICE PATTERSON'S opinion. See also *Wenz's Est.*, 345 Pa. 393 and *O'Connor's Est.*, 273 Pa. 391.

We are still of opinion, and again decide, that this testamentary disposition is ineffectual because it is not signed at the end thereof, as required by Section 2 of the Wills Act of 1917, supra.

It is to be observed that the typing appears on the right hand side of the card directly opposite the signature of decedent on the left. *It does not appear as a continuation of the printing upon the card, but is located* AFTER *the signature.*

Appellee maintains that the testimony establishes that the typing was added *before* the signature was affixed. But as pointed out by Justice BROWN in *Stinson's Est.*, 228 Pa. 475, which applies with equal force in the present case (page 479) : *"The order of connection, however, must manifestly appear upon the face of the will; it cannot be established by extrinsic proof".*

We do not entertain the slightest doubt concerning testatrix's testamentary intent. However, it is to be observed that the statutory requirement expresses a direction by the *legislature.* No question of testamentary intent is involved. As pointed out in *Churchill's Est.*, 260 Pa. 94 (page 101) : "The courts must consider that the legislature, having regard to all probable circum-

stances, has thought it best, and has therefore determined, to run the risk of frustrating the intention sometimes, in preference to the risk of giving effect to or facilitating the formation of spurious wills . . ."

The purposes of the statutory requirement that a will must be signed at the end thereof appear, under all the cases, to be most plain. They are: (1) that it shall appear from the face of the instrument itself that the testator's intent was consummated and that the instrument was complete and (2) to prevent fraudulent or unauthorized alterations or additions to the will: *Hays* v. *Harden,* 6 Pa. 409-413; *Heise* v. *Heise,* 31 Pa. 246; *Churchill's Est.,* supra; *Dietterich's Est.,* 127 Pa. Superior Ct. 315. The statute is subject to rigid construction and it will not be undermined by lax interpretation or by ingrafting of exceptions: *Hays* v. *Harden,* supra.

The fatal defect in the present writing, as a probatable document, is that the typewritten words, having no connection in their internal sense with the printed words, instead of appearing above, are beside and to the right of the signature. This typewriting has the *appearance* of having been written after the signature, because the words fit exactly into that space. While the oral evidence is to the effect that this was not the case, nevertheless, the instrument itself shows that the dispositive words appear *after* the signature and no dispositive words appear above it. The Wills Act requires signing at the end. The purpose of the Act was to remove all *possibility* of fraud. It is most evident that there exists a *possibility* of fraud in such insertions. Even if the testamentary intention of this particular testatrix is frustrated, it is much wiser to refrain from weakening the sound and well-established mandate of the legislature. Were we to do so, we might in future cases, facilitate fraudulent or unauthorized alterations or additions to wills.

The decree of the lower court is reversed, and the decree of the register refusing probate is reinstated. Costs to be paid out of decedent's estate.