## Casto Estate

*Harold B. Ramsey, Reuben Miller* and *George X. Schwarts*, for petitioner.

*Edward F. Cantlin* and *Samuel M. Tollen*, for respondents.

VAN RODEN, P. J., August 25, 1950.—This is another one of the increasingly frequent cases where testator sought to avoid the expense of consulting a lawyer to draft his will, and instead resorted to the use of a typewritten form purchased at a stationery store. Such illusory economy has resulted not only in excessive litigation, but also in the frustration of the testator's intentions.

Decedent died May 17, 1949. His last will and testament, dated April 1, 1948, which was submitted for probate, consisted of a single sheet of paper with printed introductory and concluding paragraphs. In the space between the paragraphs, on the front side of the sheet, were inserted certain dispositive provisions in typewriting. Other dispositive provisions, also typewritten, appeared on the reverse side of the sheet. The signature of decedent appears on the printed line at the lower right hand corner of the front side of the sheet, followed by a printed seal. Neither decedent's signature, initials, nor handwriting appear on the reverse side of the sheet. The register of wills admitted the front side of the sheet to probate but refused to admit the reverse side. One of the persons named as a residuary legatee in one of the provisions on the reverse side of the sheet has appealed from the register's decree of probate and has requested the court to direct the

register "to admit to probate the first and second pages of the written instrument in its entirety as the last will and testament of Theodore D. Casto, deceased".

At a hearing held on June 16, 1950, the sole witness called to testify was petitioner, who testified that decedent had been a dentist and that she had been in his employ for many years. On or about April 1, 1948, decedent dictated to petitioner certain instructions concerning his will and she then went to a public stenographer who typed the provisions, as dictated by petitioner, upon a printed form of will of the type commonly purchased in a stationery store. Petitioner then took the paper to decedent who later signed it, but not in the presence of petitioner. An examination of the will discloses that decedent in his own handwriting inserted the names of his wife and the Provident Trust Company in the blank space contained in the printed provision for the appointment of executors, and also inserted the date in the appropriate blank space and signed his name on the line provided in the printed form. The subscribing witnesses were not familiar with the contents of the will, and were unaware of any typewritten provisions on the reverse side. Thus the only testimony that the typewritten provisions on the reverse side of the will were placed thereon prior to execution by decedent is that of an interested party, since she will be entitled to a one-fifth share of the residue if the reverse side of the sheet is admitted to probate.

Section 2 of the Wills Act of April 24, 1947, P. L. 89, 20 PS §180.2, provides that:

"Every will, except nuncupative wills but including wills of mariners and persons in the Armed Forces of the United States, shall be in writing and shall be signed by the testator at the end thereof. . . ."

The section further provides that:

"The presence of any writing after the signature to a will, whether written before or after its execution, shall not invalidate that which precedes the signature."

It is clear, therefore, that the act of the register in admitting the first page of the will was correct, since such represented an admittedly valid testamentary disposition. The question as to the propriety of the register's action in refusing to admit the reverse side of the paper depends upon whether the provisions on the reverse side may be properly construed to precede testator's signature.

The determination as to whether a signature is "at the end" of a will is not always free from difficulty. As stated in Swire's Estate, 225 Pa. 188, 191 (1909):

"The end meant by this provision is the logical end of the language used, which shows that the testamentary purpose has been fully expressed. The position of the signature with regard to the bottom or end of the page is only evidence on the question whether the testator has completed the expression of his intention. Prima facie that is the natural place for the signature to be placed to show the full expression of the testator's wishes and therefore is presumptively the right place for it, but it is only evidence and must give way to evidence of a different intent."

In Coyne Will, 349 Pa. 331, 333 (1944), the Supreme Court held that:

". . . the test as to whether or not a will is signed 'at the end thereof' is not the physical point which is spatially farthest removed from the beginning. The end contemplated by the statute is the logical end of the language used by decedent in expressing his testamentary purpose."

In that case the sheet of paper offered for probate was entirely in the handwriting of decedent, but physically the signature of decedent appeared at the beginning or the top of the page instead of at the end of the

testamentary dispositions. The testimony disclosed that decedent, who was ill and confined to his bed, had first written the dispositive provisions on the lower two thirds of the sheet and then decided that he did not have room to sign his name at the end of the sheet and accordingly placed his signature at the top of the sheet and drew a line thereunder. The Supreme Court held that it was error to have admitted this testimony or to have considered its effect. The court further expressed the opinion, in line with the previous decisions, that:

"It is perhaps unfortunate that decedent's testamentary intentions are frustrated. The strictness with which this section of the Wills Act must be enforced is a matter of legislative mandate. As we said in *Brown Estate,* supra (p. 246) : 'The Wills Act requires signing at the end. The purpose of the Act was to remove all *possibility* of fraud. . . . Even if the testamentary intention of this particular testatrix is frustrated, it is much wiser to refrain from weakening the sound and well established mandate of the legislature. Were we to do so, we might in future cases facilitate fraudulent or unauthorized alterations or additions to wills'."

The instant case is clearly distinguishable from Swire's Estate, supra, which involved a codicil which contained eight consecutively numbered dispositive provisions followed by a testimonium clause, with signature in the lower right hand corner, and with paragraphs 9, 10, 11, and 12 written vertically along the left margin, and it was held that the will was signed at "the end thereof", since the continuity of the sense and not the mere position on the page must determine the statutory "end thereof" as the place for the signature. Swire's Estate was followed by this court in Hueston Estate, 73 D. & C. 258, where testatrix, in

her own handwriting used both sides of a single sheet of paper for disposing of her estate, and when she exhausted both sides, instead of using a second sheet, she turned the paper sidewise and wrote the final paragraph along the right hand margin of the reverse side, and then placed her signature at the lower right hand corner of the side of the paper, and we held that such marginal provisions were properly admitted to probate. It is significant to note that in both the Swire and Houston cases the dispositive provisions appeared on the same side of the page as the signature. It is also important to note that in the Houston case it was considered "significant that the will was holographic, since the possibility that there was a fraudulent insertion as there might have been in the case of a type-written document is practically negligible".

In the instant case the will does not contain any intrinsic evidence which would permit the court to conclude that testator intended to incorporate into his will by reference or by necessary logical connection the typewritten matter appearing on the reverse side. In this respect, the case is analogous to Brown Estate, 347 Pa. 244 (1943), where it appeared that the signature of testator appeared below the printed words of an application of a share account in a savings and loan association, on the left hand side of the card; that typewritten words, constituting a testamentary direction, were beside and to the right of the signature, and that no dispositive words appeared above the signature; and that the typewritten words had no connection in their internal sense with the printed words, and it was held that such testamentary paper was not signed at the end thereof as required by section 2 of the Wills Act and could not be probated.

Here we have only the word of an interested party that the typewritten provisions on the reverse side of

the sheet were placed thereon prior to execution by decedent.

We do not mean to imply even the slightest suspicion of fraud to petitioner. We have no doubt that she presented to the court a fair and accurate recital of the facts. But to permit her testimony to determine the instant issue might easily seem the encouragement of fraud in other cases. As stated in Brown Estate, supra, the statutory requirement that a will must be signed at the end thereof ". . . is subject to rigid construction and it will not be undermined by lax interpretation or by ingrafting of exceptions:". The Supreme Court of Pennsylvania has "consistently resisted attempts to weaken or modify the rule requiring execution of a will at the end thereof,": Baldwin Will, 357 Pa. 432, 440 (1947).

Even were we permitted to accept and consider petitioner's testimony that the typewritten provisions were placed on the reverse side of the will prior to execution by decedent, the fact remains that it does not affirmatively appear from the evidence that decedent ever saw the reverse side of the paper prior to signing. This presents an insurmountable obstacle to the granting of the relief prayed for by petitioner.

The court feels that regardless of the seeming hardship on the legatee named in the typewritten paragraphs on the reverse side of the sheet, the admission of these paragraphs to probate would be an unwarranted disregard of the mandate of the statute and would constitute a precedent which might be used as an instrument for fraud in the future. As stated in 93 U. of Pa. Law Review 116:

"Courts should not be required to struggle to make effective the intention of the decedent, at the expense of weakening if not destroying a salutary rule and thereby becoming a vehicle for confusion or even fraud."

We, therefore, hold that the provisions on the reverse side of the sheet cannot properly be admitted to probate. Accordingly, the court enters the following

### Decree

And now, to wit, August 25, 1950, upon consideration of petition, answers and proofs, it is hereby ordered and decreed as follows:

1. The decision of the register of wills in refusing to admit to probate the reverse side of decedent's will is hereby sustained and affirmed and the appeal therefrom is hereby dismissed.

2. The parties shall bear their respective costs.