## Huntley Estate

*Conrad A. Pearson,* for proponent.

*James P. Bryan,* for contestant.

ROBERTS, P. J., July 11, 1956.—This is an appeal from the action of the register of wills in admitting to probate, as the will of Estella M. Huntley, two separate documents, (1) an unsigned page of decedent's diary, written in her handwriting, and (2) a printed form (bank depositor's signature card) signed by decedent. Decedent died September 17, 1955, leaving to survive her two sons, Roy and Cecil Huntley; letters were duly issued on January 12, 1956.

The basic facts are not in dispute; the unsigned diary page in decedent's handwriting is a 5 x 7½ inch page as follows:

> "CALENDAR            1955
>                        April
>                         14
>                     Thursday

"I don't feel very good my head hurts me. this is the worst spell I have had, if anything happens to me every thing is left to you, the car and tractor. let Alton have whatever he wants. that is what you want to give him, Roy. don't live here alone. that is what has kept me down since Fay went.

"Roy left for Jamestown

"I have signed this card. Aug. 1. 1955"

The card is a 3 x 5 inch printed form headed "JOINT ACCOUNT—PAYABLE TO EITHER OR SURVIVOR" signed

by decedent below the printed matter; it contains also the signature of Roy Huntley (below decedent's) signed at his mother's request in 1954. The card when found after decedent's death contained no date; "Aug. 1. 1955" was added by a bank official in October 1955.

Proponent's exhibit 2 is a separate, unsigned and undated 5½ x 9 inch sheet of paper as follows:

"Roy I am sick, if anything happens, my cloths are in the spare bed-room. God bless you, for you have been good to me, but I have been so lonesome since Fay went. Don't stay here alone, read in my book of April 14.

"if Maud or Nell send flowers tell them I don't want any from them, and send them back, and the same to Cecils"

The day following decedent's death, Roy Huntley, the proponent, found her diary book on the buffet in her home. Enclosed in the fold of that book, lengthwise between the pages, dated April 13th and April 14th were found the signature card at right angles to the April 14th page and the above separate sheet.

The basic question for our determination is whether the unsigned diary page and the separate signature card presented to the register of wills for probate complies with section 2 of the Wills Act of April 24, 1947, P. L. 89, which requires that: "Every will, . . . shall be signed by the testator at the end thereof, . . ."

The legal right to pass property by will or inheritance exists solely by grace of the sovereign. With us, it is the Commonwealth, through the legislature, which prescribes by statute the manner in which such disposition shall be made, and the precise forms to be followed, if one wishes to make a valid will disposing of his property. A testator's clear intent to make a testamentary disposition may be totally ineffective if the writing fails to meet the legal requirements of the statute: Maginn's Estate, 278 Pa. 89.

The requirement of section 2 of the Wills Act, supra, that a will must be signed at the end, is positive and mandatory. As early as Wineland's Appeal, 118 Pa. 37, our Supreme Court, in discussing this requirement said, at page 41: ". . . The legislature have laid down a rule so plain that it cannot be evaded without a clear violation of its terms. No room is left for judicial construction or interpretation. It says a will must be signed at the end thereof, and that's the end of it". In Brown Estate, 347 Pa. 244, 246, the court said: ". . . The statute is subject to rigid construction and it will not be undermined by lax interpretation or by ingrafting of exceptions: . . . Even if the testamentary intention of this particular testatrix is frustrated, it is much wiser to refrain from weakening the sound and well-established mandate of the legislature. Were we to do so, we might in future cases, facilitate fraudulent or unauthorized alterations or additions to wills." In Coyne Will, 349 Pa. 331, 334, it is said: "The strictness with which this section of the Wills Act must be enforced is a matter of legislative mandate." Our Supreme Court has "consistently resisted attempts to weaken or modify the rule requiring execution of a will at the end thereof": Baldwin Will, 357 Pa. 432, 440.

It is apparent that the unsigned diary page itself, though written in decedent's own hand and expressing a testamentary plan of·distribution, does not meet the statutory requirement that the person making a will shall sign the same at the end. All that was required of decedent to translate that writing into a valid will was her signature following the dispositive provision. This she failed to do, her reason in not signing her name when she originally wrote the page (presumably on April 14th) is unknown. Nor, do we know her purpose in again withholding her signature from the diary page when she returned to it, at a later date, to add "I

have signed this card. Aug. 1. 1955". Had she affixed her signature to the page on the second occasion, or at any time prior to her death, she would have made that page a valid testamentary directive. Decedent's testamentary intention, no matter how clear, cannot prevail over the positive mandate of the statute that a valid will "must be signed at the end thereof": See Coyne Will, supra.

The requirement that a will be signed "at the end thereof" does not necessarily mean the physical point which is spatially farthest from the beginning. It does, however, mean the logical and sequential end as determined by the context and the language used by decedent in expressing testamentary purpose. See Maginn's Estate, supra. At least since Wikoff's Appeal, 15 Pa. 281, 290, it has been the established rule that if different pages constituting a will are not physically united, they must be "connected by their internal sense, by coherence or adaptation of parts". As was said in Maginn's Estate, supra, 96: "While a will need not be signed at the physical or spatial end, and pages need not follow in numerical order, there must be a sequence of pages or paragraphs which relates to its logical and internal sense, and the signature must be placed at the sequential end. And this end must not permit the substitution or interpolation of pages in advance unless they are connected as indicated." And in Stinson's Estate, 228 Pa. 475, 479, the court said: "The order of connection . . . must manifestly appear upon the face of the will." The applicable principle is well stated in Seiter's Estate, 265 Pa. 202, 207: ". . . There must be something in all the papers in addition to such physical connection to make a last will. It must spring from the papers themselves and each be shown, either by their relation, recital, reference, natural sequence or continuity of sense,

. . . to be part and parcel of a whole. As such they should be susceptible of certain identification. The reference must be complete in the papers themselves.".

We must therefore, in the light of the controlling authorities, determine whether decedent's signature on the separate card and the unsigned diary page meet the decisional requirements of connection by internal sense. For, unless the signature and the diary page are sufficiently " 'connected by their internal sense' " to constitute a single instrument, probate must be refused. See Rosenthal's Estate, 339 Pa. 488. The signature card itself contains nothing on its face preceding the signature which in any way refers to the diary page or to a testamentary disposition. The printed matter on the card has no relevancy here, and for present purposes may be completely ignored. The signature itself, without text or language preceding it, is incapable of manifesting (by its internal sense) any connection between it and the diary page. Totally absent is logical or grammatical sequence connecting the signature with the diary page; nothing is present upon which to predicate internal connection between them. There is no identification, reference or anything else appearing above the signature that indicates by its internal sense that the signature is in any manner a part of or related to the diary page.

The position of the signature card upon the diary page containing the words, "I have signed this card. Aug. 1. 1955". together with the other unsigned separate sheet of paper, which, in decedent's handwriting, contains the words "read in my book of April 14th" does not establish internal reference between decedent's signature and the other writings. Nothing on the signature card refers to a matter or thing in the other writing, no connection by material sense or correlation of thought is expressed or exists. Entirely

absent above the signature is any identification, recital or anything else that logically connects it with or makes it a part of the diary page. The required internal connection by inherent sense or connectedness of thought is not here supplied by the physical position of the signature, and there is nothing to show that the signature as found was to serve as the signature for the other writing.

We have carefully reviewed the authorities cited in proponent's briefs, and in our view they are inapposite and not controlling here. In each of the cases cited there was present some writing or dispositive text immediately above the signature (and on the same paper) which established by its internal sense a connection between the paper upon which the signature appeared and the other separate writing. Proponent strongly relies on Covington Estate, 348 Pa. 1, and urges that the present case is governed by it. With this we cannot agree, that case is clearly distinguishable. There the signature was on the bottom of a third sheet and above it appeared dispositive provisions which established internal connection between the signature page and the preceding detached sheets. In the instant case the signature is on a separate card without writing or any other connecting factor present.

To sustain the probate, as urged by proponent, would require stretching the governing authorities, and this we may not do. See Coyne Will, supra, and Baldwin Will, supra. Were we to do so we would in effect be signing decedent's name to the diary page and thus doing for her what she on more than one occasion did not do. We are without power in this matter, to complete the preparation of her holographic writing, just as we would be without power to complete a check or other instrument which she had drawn but had not signed.

Decedent in undertaking to prepare a homemade will was not thereby relieved from complying with the legal signature requirement applicable to all wills. Her writing would be ineffective if it failed to meet the statutory provisions governing the validity of wills. This is not a conflict with some technical rule of law (applicable to lawyer-drawn wills), but rather the failure to comply with the basic and precautionary requirement that a will must be signed by the person making it at the end thereof and not elsewhere. Personal signature is the usual and common method of signifying that the writing above the signature expresses the writer's intention. Surely decedent was aware that her signature was an important and significant act in manifesting her approval and authorization of that which appeared above it, and she knew the effect of withholding her signature.

We are prompted by these considerations to suggest that perhaps decedent did not actually intend the diary page as her will. (We do not, however, base our conclusion on the absence of testamentary intention.) If she intended a will, is it not unusual that knowing the meaning of her signature she left the diary page unsigned when originally written and later signed the separate card and subsequently returned to the diary page and noted that she had signed the card and again withhheld her signature from that page? Would she have done this if she intended to execute a will, when all she needed to do was to sign her name to the page at any time before her death? Her failure to sign the page seems to indicate that she did not intend a will when she made the entry in her diary. The bank account ($9,273.40) represented the bulk of her estate. In 1954 she secured Roy's signature on the card, and she may have been under the impression that by adding her signature to the card she disposed of this property, or she may have intended to deliver that card

266

with both signatures to the bank, and, therefore, in either event felt no need for a will.

Whatever may have been decedent's intention, it is clear that the writings probated do not comply with the requirements of the Wills Act. The two writings without the required internal connection do not constitute a single instrument, and the signature is no part of the testamentary expression appearing on the diary page. The testamentary provision is, therefore, ineffective because it is not signed at the end thereof, as required by statute. In the absence of a valid will, the appeal must be sustained and probate refused.

Accordingly we enter the following

*Decree*

And now, to wit, this July 11, 1956, the appeal from the probate of the diary page and the signature card is sustained, and the register of wills is directed to revoke the decree of probate.

The parties shall bear their respective costs.