## Harvey Estate

*Gailey C. Keller* and *Smith, Eves & Keller*, for appellants.

*David C. Dickson, Jr.*, and *Robert V. Moser*, for proponents.

KREISHER, P. J., January 16, 1964. — This is an appeal from the action of the register of wills taken on May 8, 1963, admitting to probate as the will of Rittner A. Harvey, deceased, the first page of a two-page document dated August 11, 1961. A hearing was held on August 27, 1963, and the testimony was transcribed and filed. Counsel have orally argued the case before the court and submitted their written briefs, and the matter is now before us for disposition.

The facts are not seriously in dispute, and may be briefly summarized as follows. During his first marriage, deceased, who died at the age of 76 on April 8, 1963, acquired a farm and raised a large family. In his advanced age, he remarried Lillian F. Harvey, a resident of Shamokin, who divided her time between the residence of deceased in this county and the residence of an employer in Shamokin where she worked as a practical nurse.

During the late 1950's, decedent employed a surveyor to lay out various lots on his farm for the purpose of transferring them to certain of his children; however, the plan was never fully executed during his lifetime. In July of 1961, deceased suffered a stroke or other severe illness which required his admission to the Bloomsburg Hospital on July 30th where he remained until August 21, 1961.

On or about August 9, 1961, Lillian F. Harvey engaged a Shamokin alderman who was also a personal friend to have a will prepared for her husband. The alderman contacted a Northumberland County attorney who drew up a two-page typewritten will containing six numbered paragraphs on the first page, two numbered paragraphs, seven and eight, and two un-

numbered paragraphs, the witness clause and the signature clause on the second page, and delivered the unexecuted document to the alderman. He then had three of his neighbors sign the bottom of the second page and he filled out the affidavit signing the same as alderman. On the bottom of the first page between paragraphs six and seven appears the alleged signature of the testator. The subscribing witnesses readily admit they never saw the deceased nor spoke to him so they could not have witnessed his signature. The first paragraph regards the burial and monument. The second, third, fourth and fifth paragraphs relate to specific bequests to two sons and the widow. The sixth paragraph appoints the alderman executor. The seventh paragraph is the residuary clause in favor of the widow, and the eighth paragraph is the "no contest" clause.

There was also considerable testimony introduced regarding an alleged subsequent will now lodged with the register of wills for safe keeping, and especially the conduct of the widow securing subscribing witnesses to the document after the date of death. However, we are not concerned in these proceedings with the legality of this second instrument, and we therefore refrain from any comment thereon or any conclusion therein.

As we view the situation, the basic question for our determination is whether the alleged will here before the court complies with section 2 of the Wills Act of April 24, 1947, P. L. 89, 20 PS §180.2, which provides, inter alia: "Every will, . . . shall be signed by the testator at the end thereof, . . ."

The answer to our inquiry, we believe, is ably answered in the learned opinion by Roberts, P. J., who has since been elevated to the appellate court, in Huntley Estate, 9 D. & C. 2d 258. Beginning on page 260 of the opinion it is stated:

"The legal right to pass property by will or inheritance exists solely by grace of the sovereign. With us, it is the Commonwealth, through the legislature, which prescribes by statute the manner in which such disposition shall be made, and the precise forms to be followed, if one wishes to make a valid will disposing of his property. A testator's clear intent to make a testamentary disposition may be totally ineffective if the writing fails to meet the legal requirements of the statute: Maginn's Estate, 278 Pa. 89.

"The requirement of section 2 of the Wills Act, supra, that a will must be signed at the end, is positive and mandatory. As early as Wineland's Appeal, 118 Pa. 37, our Supreme Court, in discussing this requirement said, at page 41: '. . . The legislature have laid down a rule so plain that it cannot be evaded without a clear violation of its terms. No room is left for judicial construction or interpretation. It says a will must be signed at the end thereof, and that's the end of it.' In Brown Estate, 347 Pa. 244, 246, the court said: '. . . The statute is subject to rigid construction and it will not be undermined by lax interpretation or by ingrafting of exceptions: . . . Even if the testamentary intention of this particular testatrix is frustrated, it is much wiser to refrain from weakening the sound and well-established mandate of the legislature. Were we to do so, we might in future cases, facilitate fraudulent or unauthorized alterations or additions to wills.' In Coyne Will, 349 Pa. 331, 334, it is said: 'The strictness with which this section of the Wills Act must be enforced is a matter of legislative mandate.' Our Supreme Court has 'consistently resisted attempts to weaken or modify the rule requiring execution of a will at the end thereof': Baldwin Will, 357 Pa. 432, 440.

". . . The requirement that a will be signed 'at the end thereof' does not necessarily mean the physical point which is spatially farthest from the beginning.

It does, however, mean the logical and sequential end as determined by the context and the language used by decedent in expressing testamentary purpose. See Maginn's Estate, supra. At least since Wikoff's Appeal, 15 Pa. 281, 290, it has been the established rule that if different pages constituting a will are not physically united, they must be 'connected by their internal sense, by coherence or adaptation of parts.' As was said in Maginn's Estate, supra, 96: 'While a will need not be signed at the physical or spatial end, and pages need not follow in numerical order, there must be a sequence of pages or paragraphs which relates to its logical and internal sense, and the signature must be placed at the sequential end. And this end must not permit the substitution or interpolation of pages in advance unless they are connected as indicated.' And in Stinson's Estate, 228 Pa. 475, 479, the court said: 'The order of connection . . . must manifestly appear upon the face of the will.' The applicable principle is well stated in Seiter's Estate, 265 Pa. 202, 207: '. . . There must be something in all the papers in addition to such physical connection to make a last will. It must spring from the papers themselves and each be shown, either by their relation, recital, reference, natural sequence or continuity of sense, . . . to be part and parcel of a whole. As such they should be susceptible of certain identification. The reference must be complete in the papers themselves.' "

From the foregoing, it seems clear to us that the alleged will here offered for probate does not meet the foregoing requirements and is certainly not signed at the logical end thereof. In addition to the foregoing, a fair reflection upon the chain of events surrounding the entire transaction creates considerable doubt as to the purity and legality of the document.

Without reiterating the conduct of the widow and the alderman respecting the manner in which this

instrument is alleged to have come into existence, it is the court's opinion that the entire proceedings takes on a noxious odor, and even though we were not convinced that the technical reason for striking down the will because of the failure of the signature to appear at the end thereof did not prevail, we would be inclined to hold under the testimony in the record respecting the authenticity of the signature that the proponents have failed to prove the genuineness of the deceased's signature to the instrument involved, and therefore, without further comment, we enter the following:

### *Order of Court*

And now, to wit, January 10, 1964, the appeal from the probate of the first page of the alleged will is sustained, and the Register of Wills is directed to revoke the decree of probate. The parties to the contest shall bear their respective costs, and the costs of record shall be paid by the proponents.