J-A20028-23

2023 PA Super 180

| | | |
|---|---|---|
| IN RE: ESTATE OF: SUSAN L. KITTLER, DECEASED | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: KARL E. KITTLER | : : : : : : : : | |
| | : | No. 1636 MDA 2022 |

Appeal from the Order Entered October 11, 2022
In the Court of Common Pleas of Lancaster County
Orphans' Court at 2022-00236

BEFORE:   PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.*

OPINION BY MURRAY, J.:                          **FILED SEPTEMBER 25, 2023**

Karl E. Kittler (Appellant) appeals from the order denying his petition for citation *sur* appeal from the register's decree refusing to probate the will of Susan L. Kittler, Deceased (Decedent).  We affirm.

Decedent died on October 17, 2021.  She was survived by her two children: Appellant and Keith A. Kittler (Keith).  On January 27, 2022, Appellant filed a petition for probate and grant of letters testamentary. Appellant attached a document purporting to be Decedent's will.  On January 31, 2022, the register of wills issued a decree denying Appellant's petition and refusing to probate the purported will.

On February 28, 2022, Appellant filed a notice of intention to appeal. On April 28, 2022, Appellant filed a petition for citation *sur* appeal.  A citation

---

* Former Justice specially assigned to the Superior Court.

was issued and returned to the orphans' court on June 8, 2022. Keith joined

Appellant's appeal on June 10, 2022. No one opposed the petition for citation

sur appeal.

At a July 18, 2022, hearing, Appellant presented the testimony of John

Porter, Esquire (Attorney Porter), the scrivener of Decedent's will, and Janelle

Black Makowski (Ms. Makowski), the notary public who notarized the will.

> Attorney Porter testified that on October 26, 2020, he met with [Appellant], Keith [], and Keith' s wife, Heather Kittler, to discuss the medical condition of [Decedent]. At the time, [Decedent] had been hospitalized related to a fall she suffered[, and also had] a cancer biopsy, the results of which were pending. It was assumed that the biopsy would exhibit unfavorable results.
>
> At the initial conference, Attorney Porter was provided contact information for Decedent, and on November 12, 2020, he was eventually able to [contact] her to discuss her estate planning. At the time, [] Decedent was in a nursing home during the height of the COVID-19 pandemic and visitors were prohibited. During that initial conversation between Attorney Porter and the Decedent, [] Decedent expressed that she wanted to create a last will and testament as well as a power of attorney. [] Decedent and Attorney Porter had a detailed and candid discussion about Decedent's wishes for administration of her estate and the responsibilities of the person selected to follow her health care directives.

Orphans' Court Opinion, 10/11/21, at 2-3 (citations omitted).

> Attorney Porter testified that his next conversation with Decedent
>
> occurred on November 18, 2020, at which time [] Decedent had learned that her cancer was in her bone. [] Decedent wished to include her financial planner, Adam Hartzell, in the discussion of her estate planning[,] and he was included in the conference call on November 18, 2020. [] Decedent, Attorney Porter[,] and Mr. Hartzell worked together to ensure that all participants in the telephonic conference understood [] Decedent's assets and that both the probate and non-probate assets would flow to the

- 2 -

beneficiaries in accordance with [] Decedent's intent. Attorney Porter testified that [] Decedent was clear about her wishes to draft a Will to ensure that all parties knew her intent and desires when it came to distribution of her assets.

Attorney Porter drafted a will in accordance with [] Decedent's wishes. He secured the services of [Ms.] Makowski, a notary who was qualified to conduct a remote notarization of a document. Attorney Porter had two witnesses join him **at his office**, namely, Vicki Sealover and Karmin Smith (witnesses).

*Id.* at 3-4 (citations omitted, emphasis added).

On November 24, 2020, a video conference took place. Attorney Porter and his two witnesses attended the video conference from his office; Decedent attended from her nursing home; and Ms. Makowski attended from her residence. *Id.* at 4 (citations omitted). The orphans' court explained,

[Ms.] Makowski … was employed by the York County Bar Association at the time. Ms. Makowski utilized DocVerify, an online software vendor that met the Pennsylvania Department of State's requirements to serve as a secure electronic method for affixing a digital signature which may be acknowledged through the remote participation of a notary public. Ms. Makowski testified extensively about the DocVerify procedure.

In order to utilize the DocVerify software, the signer must go through an independent verification process to confirm the signer's identity, including the signer's address and social security number. While establishing an account, DocVerify collects an electronic signature from the signer. This "collected" signature can then be applied to the document uploaded onto DocVerify for purposes of notarization.

*Id.* at 4-5 (citations omitted). Ms. Makowski also required a signer to present state-issued identification at the time of signing. *Id.* at 5. Ms. Makowski confirmed that Decedent verified her identity during the video conference. *Id.*

The purported will included, at its end, a signature line followed by a red box containing the word "Seal." *Id.* at 6. The orphans' court relayed:

> On the line for [] Decedent's signature is a red box that contains the number 587B93E4B8EA at the top of the box in red and "Signed on 2020/11/24 10:59:15-8:00" in black at the bottom of the box. Inside the box is the script name (not a font generated by a computer) appearing to be the signature of [Decedent]. This signatory box also appears on the bottom of each of the prior pages, not directly above the blank line and the initials SLK, but to the left of the line.

*Id.* (citations omitted)

The orphans' court ultimately concluded that Decedent's electronic signature failed to meet Pennsylvania's legal standard for signing a will. *Id.* at 8. Taking as true the facts most favorable to Appellant, the orphans' court concluded "the Purported Will is not a will executed pursuant to Pennsylvania's long-standing statute and is not subject to probate as such." *Id.* Therefore, the orphans' court denied Appellant's petition for citation *sur* appeal. Orphans' Court Order, 10/11/20. Appellant timely filed a notice of appeal. Appellant and the orphans' court have complied with Pa.R.A.P. 1925.

Appellant presents the following issue:

> Did the Orphans' Court err by concluding the electronic signature affixed to [] Decedent's will is insufficient to satisfy the requirement that her will be signed at the end thereof?

Appellant's Brief at 5.

Appellant emphasizes that Decedent's will undisputedly "bears her signature – and not a computer-generated font – at the end thereof." *Id.* at 18. Appellant claims the orphans' court cites no statute or case to support its

- 4 -

conclusion that an electronic signature is not a "signature" under 20 Pa.C.S.A. § 2502. *Id.* at 19. According to Appellant, the Probate, Estates and Fiduciaries Code (Probate Code)[1] does not define "sign" and "signature." *Id.* at 20. Appellant relies on the definition in Black's Law Dictionary:

> Black's La[w] dictionary defines the noun "signature" in two ways: (1) a person's name or mark written by that person or at the person's direction; and (2) any name, mark or writing used with the intention of authenticating a document.

*Id.* at 20 (citing BLACK'S LAW DICTIONARY (11TH ed. 2019)). Appellant additionally relies on the definition in the Pennsylvania Rules of Civil Procedure:

> The Pennsylvania Rules of Civil Procedure define[] "signature" to include a computer-generated signature created, transmitted, received, or stored by electronic means….

*Id.* (citing Pa.R.C.P. 76). Appellant acknowledges, "Neither of these definitions is specific to the execution of estate planning documents…." *Id.*

Appellant asserts "the lack of legislative authority on what constitutes a signature in the context of testamentary rights has required judicial intervention for more than one hundred years[.]" *Id.* at 22. Appellant directs our attention to the Pennsylvania Supreme Court's decisions in *In re Brennan's Estate*, 91 A. 220 (Pa. 2014), *Appeal of Knox*, 18 A. 1021 (1890), and *In re Kimmel's Estate*, 123 A. 405 (Pa. 1924). Appellant's Brief

---

[1] *See* 20 Pa.C.S.A. §§ 101-8815.

- 5 -

at 22-24. Appellant argues that in *Kimmel*, which interpreted *Knox* and *Brennan's Estate*, the Supreme Court applied an "intent-based" approach to determine whether the decedent's handwritten "Father", at the end of his will, met the signature requirements for a will. *Id.* at 24-25.

Appellant additionally cites the Cumberland County Orphans' Court's decision in *In Re Estate of Joyce A. Waltman*, 21-21-0045 (Cumberland O.C. 2021). Appellant's Brief at 25. In substantially similar circumstances, the orphans' court accepted for probate a document with an electronic signature. *See id.* at 25, 28. In *Waltman*, Appellant asserts, the orphans' court details

> the Pennsylvania Department of State's communications provided to attorney on April 02/2020, which indicated that self-proving wills could be executed using remote online notarization. *Waltman* concludes: "In the case before this court, a reading of the [Probate] Code, legislative rules, definitions and case law show this e-will complies with the statutory requirements in that it is in 'writing' and 'signed at the end thereof.'" *Waltman* at 12. *Waltman* explains:
>
> "The remote ceremony served the same evidentiary functions as much as an in-person ceremony. The use of webcams provides an opportunity to photograph the decedent and witnesses as well as recording the entire transactions. The specialized state approved software required to be used in [Electronic/Remote Notarization (RON)], provides security technology beyond anything existing in hard copy wills.
>
> ….
>
> As an alternative to using RON during the Covid restrictions, [D]ecedent could have signed her will without witnesses or a notary and it would have been acceptable for probate. Admitting such a document with little proof as to its veracity, while refusing

an e-will executed with formality and an abundance of safeguards would be absurd, unreasonable, and against legislative intent.

*Id.* at 12.

Appellant's Brief at 28-29 (emphasis omitted).

Finally, Appellant claims the orphans' court improperly imposed new requirements for executing a will, "while ignoring the advancements in technology." *Id.* at 32 (capitalization modified). Appellant argues the orphans' court now requires that a will be signed using pen and paper. *Id.*

Appellant challenges the orphans' court's interpretation of Probate Code Section 2502. As with all questions of law, our standard of review is *de novo,* and our scope of review is plenary. *In re Estate of Wilner*, 142 A.3d 796, 801 (Pa. 2016).

This case presents an issue of statutory interpretation.

"The best indication of legislative intent is the plain language of the statute." *Roverano v. John Crane, Inc.*, 226 A.3d 526, 535 (Pa. 2020), *citing Matter of Private Sale of Prop. By Millcreek Twp. Sch. Dist.*, 646 Pa. 339, 185 A.3d 282, 290-91 (Pa. 2018). … When the words of a statute are clear and free from ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b). "'Only if the statute is ambiguous, and not explicit, do we resort to other means of discerning legislative intent.'" *Roverano*, 226 A.3d at 535, *quoting Millcreek Twp. Sch. Dist.*, 185 A.3d at 291; 1 Pa.C.S. § 1921(c).

… "The [Statutory Construction] Act provides that '[w]ords and phrases shall be construed according to the rules of grammar and according to their common and approved usage'; and that 'technical words and phrases and such others as have acquired a peculiar and appropriate meaning … shall be construed according to such peculiar and appropriate meaning or definition.'" *Id., quoting* 1 Pa.C.S. § 1903(a). "Further, if the General Assembly

defines words that are used in a statute, those definitions are binding." *Id., citing* **Commonwealth v. Kimmel**, 523 Pa. 107, 565 A.2d 426, 428 (Pa. 1989). The Act allows a court to presume that the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable; that the General Assembly intends the entire statute to be certain and effective, and intends to favor the public interest as against any private interest. 1 Pa.C.S. § 1922(1), (2), (5)....

**Raynor v. D'Annunzio**, 243 A.3d 41, 53-54 (Pa. 2020). When the words of a statute are not explicit,

the intention of the General Assembly may be ascertained by considering, among other matters:

**(1)** The occasion and necessity for the statute.

**(2)** The circumstances under which it was enacted.

**(3)** The mischief to be remedied.

**(4)** The object to be attained.

**(5)** The former law, if any, including other statutes upon the same or similar subjects.

**(6)** The consequences of a particular interpretation.

**(7)** The contemporaneous legislative history.

**(8)** Legislative and administrative interpretations of such statute.

1 Pa.C.S.A. § 1921(c).

Mindful of the foregoing, we review the Probate Code's requirements for executing a will.

Section 102 of the Probate Code defines a "will" as "a written will, codicil or other testamentary writing." 20 Pa.C.S.A. § 102. Section 2502 provides:

Every will shall be in writing and **shall be signed by the testator at the end thereof**, subject to the following rules and exceptions:

**(1) *Words following signature.* —** The presence of any writing after the signature to a will, whether written before or after its execution, shall not invalidate that which precedes the signature.

**(2) *Signature by mark.* —** If the testator is unable to sign his name for any reason, a will to which he makes his mark and to which his name is subscribed before or after he makes his mark shall be as valid as though he had signed his name thereto: Provided, [t]hat he makes his mark in the presence of two witnesses who sign their names to the will in his presence.

**(3) *Signature by another.* —** If the testator is unable to sign his name or to make his mark for any reason, a will to which his name is subscribed in his presence and by his express direction shall be as valid as though he had signed his name thereto: Provided, [t]hat he declares the instrument to be his will in the presence of two witnesses who sign their names to it in his presence.

*Id.* § 2502 (emphasis added).

Our Supreme Court has long recognized that a testamentary instrument must be signed, as required by statute, to be valid. *In re Sciutti's Estate*, 92 A.2d 188, 189 (Pa. 1952) ("an unsigned document in the form of a will cannot be probated as a will. A will in order to be valid must be signed.") (emphasis omitted). In *Brown's Estate*, 32 A.2d 22 (Pa. 1943), the Court explained that a will must be signed because

(1) [I]t shall appear from the face of the instrument itself that the testator's intent was consummated and that the instrument was complete and (2) to prevent fraudulent or unauthorized alterations or additions to the will.

*Id.* at 23.

The Probate Code does not define the terms "signed" or "signature." Accordingly, these words "shall be construed according to the rules of grammar and according to their common and approved usage[.]" 1 Pa.C.S.A. § 1903(a). The dictionary defines "signature," as "the act of signing one's name to something[;]" and "the name of a person **written with his or her own hand**[.]" "Signature." *Merriam-Webster.com.* August 19, 2023. https://www.merriam-webster.com/dictionary/signature (accessed August 25, 2023) (emphasis added).

The verb "sign" is defined "to affix a signature to[;]" "ratify or attest by hand or seal[;]" to write down (one's name)[;]" and "to affix one's name to[.]" "Sign." *Merriam-Webster.com.* August 19, 2023. https://www.merriam-webster.com/dictionary/sign (accessed August 25, 2023). The dictionary also includes a "legal definition" for "sign" as "to affix a signature to[.]" ***See id.*** The definitions do not expressly include computer generated signatures.

Our legislature has approved the use of electronic signatures in Pennsylvania's Electronic Transactions Act (PETA).[2] In PETA, the General Assembly declared, "A record or signature may not be denied legal effect or enforceability solely because it is in electronic form." 73 P.S. § 2260.303(a). However, the scope of PETA is limited to transactions:

> **(a) GENERAL RULE.—** Except as provided in subsection (b), this act applies to electronic records and electronic signatures relating to a <u>transaction</u>.

---

[2] ***See*** 73 P.S. §§ 2250.101–2260.5101.

**(b) EXCEPTION.—** Subject to subsection (c), this act does not apply to a transaction to the extent it is governed by any of the following:

**(1) A law governing the creation and execution of wills, codicils or testamentary trusts.**

73 P.S. § 2260.104(a)-(b)(1) (bold and underline added). Thus, PETA's provisions do not apply in this case, where the Probate Code dictates the "creation and execution" of wills. ***See id.*** § (b)(1).

Appellant argues the Pennsylvania Rules of Civil Procedure have adopted the use of electronic signatures. Appellant's Brief at 20. Rule 76 provides:

The following words and phrases when used in the Rules of Civil Procedure shall have the following meanings, respectively, unless the context clearly indicates otherwise or the particular word or phrase is expressly defined in the chapter in which the particular rule is included:

….

"[S]ignature," includes

….

**(2)** when used in reference to documents produced by a court of the Unified Judicial System, a handwritten signature, a copy of a handwritten signature, a **computer generated signature or a signature created, transmitted, received, or stored by electronic means**, by the signer or by someone with the signer's authorization unless otherwise provided in these rules[.]

Pa.R.C.P. 76 (emphasis added).

The Orphans' Court Rules include no similar provision. However, Pennsylvania Rule of Judicial Administration 510, adopted by our Supreme Court, permits electronic filing of guardianship reports and accountings:

> The submission and acceptance of an electronic filing shall satisfy the reporting requirements of Pa.O.C. Rule 14.8. An electronic filing shall be considered filed with the Clerk upon the date and time of the filer's electronic submission, if the Clerk determines the requirements for filing are met. If the Clerk determines the requirements for filing are not met, the Clerk may take any action as permitted by law, including, but not limited to, returning the submission for correction.

Pa.R.J.A. 510(c)(6).

Rule 510 expressly provides for electronic signatures:

> **(d)** Signature.
>
> **(1)** The electronic signature of the guardian, as required on the reports and inventories, shall be in the following form: /s/ *Chris L. Smith*.
>
> **(2)** The use of an electronic signature on electronically filed reports and inventories shall constitute the guardian's acknowledgement of, and agreement with, the verification statements contained therein.

Pa.R.J.A. 510(d). The Supreme Court permitted the use of an electronic signature to meet the requirements of Pa.O.C.R. 14.8 (Guardianship Reporting, Monitoring, Review, and Compliance), but adopted no similar rule regarding the execution of wills.

Clearly, Pennsylvania's definition of a valid will has contemplated the technology available to testators and their counsel. Neither our General Assembly nor our Supreme Court have approved the use of DocVerify, or any other software, in executing a valid will. In the absence of any authority governing electronic wills, our orphans' courts have issued conflicting decisions regarding their validity. **Compare Estate of Nadim R. Baker**, No.

36-20-0446 (Lancaster O.C. 2021) (refusing to probate an electronically signed will); *with In Re Estate of Joyce A. Waltman*, 21-21-0045 (Cumberland O.C. 2021) (accepting for probate an electronically signed will). We recognize the need for guidance on this issue because policy decisions rest with our General Assembly, not this Court.

We further acknowledge that various states have adopted versions of the Uniform Law Commission's[3] Uniform Electronic Wills Act (UEWA),[4] while Pennsylvania has not. Again, "as an appellate court, we are charged to interpret the law as it is now, not what we want it to be, or what it might be in the future." *Commonwealth v. Stone*, 273 A.3d 1163, 1174 (Pa. Super. 2022). We are thus constrained to await a pronouncement from our Supreme Court or General Assembly regarding electronic technology in the execution of wills.

---

[3] "[T]he National Conference of Commissioners on Uniform State Laws, established in 1892, provides states with non-partisan, well-conceived and well-drafted legislation that brings clarity and stability to critical areas of state statutory law." https://www.uniformlaws.org/aboutulc/overview (last accessed Aug. 31, 2023).

[4] *See* https://higherlogicdownload.s3-external-1.amazonaws.com /UNIFORMLAWS/d895e3bb-c273-fff3-0ec9-9fb89b151f16_file.pdf?AWSAccessKeyId=AKIAVRDO7IEREB57R7MT&Expires=1693496891&Signature=ONEaWfBd%2F9UXx61jbmH8UnGUiRU%3D (accessed August 31, 2023).

The orphans' court recognized the limits of its authority in denying Appellant's citation *sur* appeal:

> The requirements to make a will in Pennsylvania are straightforward. A will must be in writing, a will must be made by a person over the age of 18 years who is of sound mind, and a will must be signed by the testator at the end of the writing. 20 Pa.C.S. § 2501 and § 2502. Statutory authority exists for the execution of a will by a decedent's mark, but the mark must be made on the testamentary document in the presence of two witnesses[5] who sign their names to the will[,] and that the witnesses [indicate] that the will was executed by mark rather than by the testator's signature. ***Id.***
>
> The Decedent's Purported Will bears her name in script writing near the end of the document. However, this script writing is an image which is sometimes referred to as a "digital signature" that was placed upon the document electronically through the DocVerify software. The Decedent never put ink to the copy of the Purported Will offered for probate. The [orphans' c]ourt will not exceed its authority by expanding the statutory requirement that a will must be signed at the end to encompass the placement of an image towards the end of the document in lieu of the testator's manual signature on the document.

Orphans' Court Opinion, 10/11/21, at 9 (emphasis and footnote added).

As we agree with the orphans' court's reasoning and discern no error, we are constrained to affirm the order denying Appellant's petition for citation *sur* appeal.

Order affirmed.

---

[5] The statute does not indicate that the presence of the two witnesses, via video conference, is acceptable.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/25/2023